PEOPLE ex rel. ISAACS v. MORAN, Peace Officer.

(Supreme Court, Special Term, New York County. December· 21, 1911.)

CONSTITUTIONAL LAW (§§ 206, 283*)—EMINENT DOMAIN (§ 2*)—TAXATION (§ 859*)—STOCK TRANSFER TAX LAW—SALE OF STAMPS.

The amendment effective March 9, 1911 (Laws 1911, c. 12) of Stock Transfer Tax Law, § 271a, so as to require the consent of the State Comptroller to a sale of tax stamps, is not unconstitutional as to one who had a large quantity of stamps on hand at the time of the amendment as constituting a deprivation of liberty and property without due process of law nor as abridging his rights, privileges, and immunities as a citizen, nor as taking private property for public use without due compensation.

[Ed. Note.—For other cases, see Constitutional Law, Dec. Dig. §§ 206, 283;* Eminent Domain, Dec. Dig. § 2;* Taxation, Dec. Dig. § 859.*]

Habeas corpus proceeding by the People of the State of New York, on the relation of Alfred A. Isaacs, against John Moran, a peace officer of the county of New York. Writ dismissed, and relator remanded.

George Ryall, for relator.

Thomas Carmody and·Samuel Ecker, Deputy Atty. Gen., for defendant.

SEABURY, J. The question to be determined is presented upon the return to a writ of habeas corpus. The relator has been arrested and is held by virtue of a warrant of arrest issued by a city magistrate on the charge of having on the 3d day of October, 1911, in the county of New York, violated the provisions of section 271a of the stock transfer tax law, in that he sold adhesive stamps issued pursuant to the said law by the State Comptroller without having the written consent of said State Comptroller.

This law, as originally enacted, did not require that those who sold stamps should first obtain the written consent of the State Comptroller. Chapter 62, Laws 1909. It was amended by chapter 12 of the Laws of 1911 so as to require the written consent of the State Comptroller. The amendment went into effect March 9, 1911. Section 271a of the stock transfer tax law, as amended, provides as follows:

"Sale of stamps. No person, firm, company, association or corporation other than a corporation organized under the banking law of the state or under the national bank act of the United States, or a duly authorized agent of the Comptroller, shall sell or expose for sale any stamp issued pursuant to this article without first obtaining from the Comptroller his written consent, except that in connection with a sale of or agreement to sell stock a broker or agent of the principal making such sale or agreement to sell may supply and affix the stamp or stamps required by this article. No person shall sell any stamp for a sum less than the face value thereof without the written consent of the Comptroller. Any person violating any provision of this section shall be guilty of a misdemeanor."

The relator's claim is that, when section 271a was amended, he had in his lawful possession about $1,000 worth of stamps which he had purchased under the original law, and that the amendment which makes the consent of the State Comptroller necessary to enable him to sell such stamps is in violation of those constitutional provisions, federal and state, which protect liberty and property from invasion without due process of law, and abridges the rights, privileges, and immunities secured to citizens, and takes private property for public use without due compensation. The proprietary interest which one has in stamps purchased under the provisions of this law is of a limited and peculiar character. Thus the owner can use the stamps as stamps only for the purposes prescribed by law. The value of such stamps springs entirely from the statute pursuant to which they are issued. Such attributes of property as these stamps possess attach to them solely by virtue of the statute. The legal nature of a stamp is evident from an inquiry into the history of stamp duties.

Stamp duties first originated in Holland in 1624. In order to provide funds for carrying on a contest with Spain, the Holland government offered a reward to any one who should devise the best new tax. Among the taxes suggested was the stamp duty. In England the first stamp duty was provided for in 5 William & Mary (chapter 21, 1694) to aid in raising revenue towards carrying on the war then pending with France (Edwards on Stamp Act, p. 3). Adam Smith, writing in 1776, speaks of stamp duties as a "very modern invention," and remarks that:

"In the course of little more than a century * * * stamp duties have, in Europe, become almost universal."

And adds that:

"There is no art which one government sooner learns of another than that of draining money from the pockets of the people." Wealth of Nations (Cannan Ed.) p. 346.

Stamp duties are therefore a means of raising revenue and a branch of the system of taxation. Presumably they are levied because the Legislature deems a necessity to exist for raising revenue, and, when the necessity no longer exists, the Legislature may repeal them. They are issued for governmental purposes, and any one purchasing them does so subject to the right of the government to repeal the law pursuant to which they are issued and upon which their value depends. If, as I think is evident from the nature of a stamp duty, the Legislature may repeal the law pursuant to which the duty is levied at any time, it follows that it is competent for the legislative power to provide that stamps shall be sold only by those duly licensed to sell them. The fact that such a restriction may impair the right of those who have purchased stamps to sell them is a mere incident of the exercise of such undoubted legislative power. If the law itself were repealed, the owner could not then sell the stamps for the purpose for which they were originally designed, and the stamps would be without any value at all. Yet the right of the Legislature to repeal at any time a tax which it has levied is beyond dispute. If the Legislature may do this, it is difficult to see why it may not limit the right to sell stamps to those who are licensed to sell them.

The statute seems to me to be free from any constitutional objection, and the writ is dismissed, and the relator remanded.